**Mayerson & Hartheimer, PLLC**
Sandra E. Mayerson, Esq.
David H. Hartheimer, Esq.
845 Third Avenue, 11th Floor
New York, NY 10022
Tel: (646) 778-4381
Fax: (646) 778-4384
sandy@mhlaw-ny.com
david@mhlaw-ny.com

*Counsel for Foreign Representative*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 |
| Total Debt Relief Ltd., | |
| Debtor in a Foreign Proceeding. | Case No. 18-46013 (CEC) |

## NOTICE OF FOREIGN REPRESENTATIVE'S MOTION FOR AN ORDER OF CIVIL CONTEMPT

**PLEASE TAKE NOTICE** that upon the Motion of the Foreign Representative for an

Order of Civil Contempt, dated March 21, 2019 (the "Motion"), the Foreign Representative in

the above-captioned case, by and through his undersigned counsel, Mayerson & Hartheimer,

PLLC, will move before the Hon. Judge Carla E. Craig at the United States Bankruptcy Court for

the Eastern District of New York, 271-C Cadman Plaza East, Room No. 3529, Brooklyn, New

York 11201 on **April 10, 2019, at 4:30 P.M.** (the "Hearing"), or as soon thereafter as counsel

can be heard, for an order granting the relief requested in the Motion.

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be set

forth in a writing describing the basis therefor and conforming to the Federal Rules of

Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Eastern

District of New York, and shall be filed and served as follows, so as to be received no later than

**April 3, 2019, at 4:00 P.M., Eastern Time:**

(i)     One copy shall be filed with the Bankruptcy Court electronically by utilizing the Court's electronic case filing system at www.nyeb.uscourts.gov, or, if the same cannot be filed electronically, by manually filing same with the Clerk of the Court, United States Bankruptcy Court, Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, NY 11201;

(ii)    One courtesy copy shall be submitted in hard copy directly to the chambers of the Hon. Carla E. Craig, United States Bankruptcy Judge, United States Bankruptcy Court, 271-C Cadman Plaza East, New York, NY 11201; and

(iii)   one copy shall be served upon each of: (a) Sandra E. Mayerson, Esq., Counsel to the Foreign Representative, Mayerson & Hartheimer, PLLC, 845 3rd Ave., 11th floor, New York, NY 10022, sandy@mhlaw-ny.com; and (b) Office of the United States Trustee, 201 Varick St., Suite 1006, New York, NY 10014 (Attn.: Nazar Khodorovsky, Esq.).

*[Remainder of page intentionally left blank.]*

**PLEASE TAKE FURTHER NOTICE** that any party objecting to the relief requested in the Motion must appear at the Hearing. The Hearing may be adjourned from time to time by announcement in open court without any further or other notice thereof.

Dated: March 21, 2019
      New York, New York

                            **MAYERSON & HARTHEIMER, PLLC**

                            *Counsel to the Foreign Representative*

                            *By:*    s/Sandra E. Mayerson
                                Sandra E Mayerson
                                Mayerson & Hartheimer, PLLC
                                845 3rd Ave., 11th floor
                                New York, NY 10022
                                (212) 646-778-4381
                                sandy@mhlaw-ny.com

**Mayerson & Hartheimer, PLLC**
Sandra E. Mayerson, Esq.
David H. Hartheimer, Esq.
845 Third Avenue, 11th Floor
New York, NY 10022
Tel: (646) 778-4381
Fax: (646) 778-4384
sandy@mhlaw-ny.com
david@mhlaw-ny.com

**Hearing Date:** April 10, 2019
4:30 PM Eastern
**Objection Deadline:** April 3, 2019
4:30 PM Eastern

*Counsel for Foreign Representative*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re:                                                    Chapter 15

Total Debt Relief Ltd.,

       Debtor in a Foreign Proceeding.    Case No. 18-46013 (CEC)

---

**FOREIGN REPRESENTATIVE'S MOTION FOR AN ORDER OF CIVIL CONTEMPT**

Stephen John Hunt, in his capacity as the duly authorized foreign representative (the "Foreign Representative") of Total Debt Relief Ltd. ( in liquidation) (the "Debtor" or "TDR") in relation to the liquidation of TDR (the "UK Proceeding")[1] pursuant to the UK Insolvency Act of 1986 (the "Insolvency Act") currently pending before the Business and Properties Courts of England and Wales of the UK High Court of Justice (London, England) (the "UK Court"), by his United States attorneys, Mayerson & Hartheimer, PLLC ("M&H"), respectfully submits this Motion for entry of an order, in substantially the form attached hereto as **Exhibit A** (the "Contempt Order"), pursuant to section 105(a) of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 9014 and 9020 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The defined term the "UK" shall be used in this Motion to refer to the United Kingdom of England, Scotland, Northern Ireland, and Wales.

"Bankruptcy Rules"), (i) holding Lawrence Kopylov and Eric Puzaitzer (together, the "Contempt Parties") in civil contempt for violating this Court's *Order (I) Recognizing the UK Consent Order and Directing Turnover of the Debtor's Assets, and (II) Ordering Turnover of the Debtor's Books and Records* [Docket No. 22] (the "Turnover Order") and (b) ordering that the Contempt Parties be fined and/or taken into custody by the United States Marshal until they comply with the Turnover Order and/or the Contempt Order. In support of this Motion, M&H has concurrently filed an affidavit of Andrew Fatherly, a Senior Manager of Griffins, the firm of the Foreign Representative, who has day-to-day responsibility for administration of the UK Proceeding (the "Fatherly Aff."), which is incorporated herein by reference.[2]

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, as amended on December 5, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A),(E), and (P). Venue is proper pursuant to 28 U.S.C. § 1410(3). The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rules 9014 and 9020.

## Preliminary Statement

2.      Pursuant to this Court's January 25, 2019, Turnover Order, the Contempt Parties were ordered to turn over or provide copies on or before February 8, 2019, of any and all recorded information relating to TDR's assets, affairs, rights, obligations or liabilities, including any

---

[2]      Also incorporated herein by reference are the *Foreign Representative's Motion for an Order to Show Cause Why the Court Should Not (I) Recognize the UK Consent Order and Direct Turnover of the Debtor's Assets, and (II) Order Turnover of the Debtor's Books and Records* [Docket No. 19] ("Turnover Motion") and its accompanying Declaration of Stephen Hunt in support thereof.

electronic data or records maintained on third-party servers to which the Contempt Parties could obtain access.  As set forth in the Turnover Motion, the Foreign Representative needs these books and records to trace and recover funds that appear to have been misappropriated from TDR and/or its clients and determine the rightful recipients of such recovered funds based on the information contained in TDR's books and records that the Contempt Parties refuse to provide.

3.      Despite the clear and unambiguous terms of the Turnover Order and the fact that the Contempt Parties did not oppose the Turnover Motion, they have nonetheless patently ignored the Court's direction to turn over basic financial information of TDR for its last two years of operation. Instead, the information provided to the Foreign Representative has been limited to: (i) internal sales outreach tracker; (ii) two Excel files with client balances, debt amounts, number of creditors and contact dates; (iii) copies of two invoices, and (iv) certain other cherry-picked documents of little use to the Foreign Representative, all of which were for periods prior to January 1, 2017. The Contempt Parties have provided no records whatsoever relating to 2017 and 2018, except for a handful of bank statements. The Contempt Parties have failed to provide any profit and loss statement or copies of receipts, receivables, invoices, transfers and payments, ledgers concerning client funds held in trust, access to its online specialist debt management software, any other general business ledger, or any other correspondence (including electronic mail) that would provide a comprehensible accounting of TDR's transactions and operations in 2017 to 2018.

4.      The Contempt Parties have claimed that they do not have any customary financial records of TDR because TDR only creates basic financial records once a year through QuickBooks software in order to prepare TDR's publicly-filed annual statutory accounts. The Contempt Parties further claim that to provide financial records for 2017 and 2018, they would need access to the

bank statements, which they no longer have, and time to construct the historical records.[3] Such a claim is as implausible as the practice would be improper and impractical for any operating business. No business can operate legitimately without keeping track of debits and credits, especially one that holds money of third parties in trust. Indeed, TDR's former director Sarah Tabor-Thickett ("Ms. Tabor-Thickett") has informed the Foreign Representative that debt management software called "Debt Manager" was used by the company to keep track of the progress of its clients' repayment plans, and that Mr. Kopylov operated this software from New York. However, Mr. Kopylov has not provided access to this software to the Foreign Representative. Accordingly, the Contempt Parties' claim is nothing more than a willful misrepresentation to avoid turnover.

TDR's annual statutory accounts for the financial year 2017 were due to be filed on September 30, 2018. Kopylov remained TDR's CEO and sole shareholder with control over TDR's books and records through September 12, 2018. It is thus inconceivable that TDR would not have made significant progress in preparing financial records less than two weeks before the annual accounts filing deadline and that Kopylov would not have access to and control over such records. Indeed, Ms. Tabor-Thickett, has informed the Foreign Representative that Kopylov saved significant financial records of TDR onto a Dropbox account stored on his personal computer, from which he communicated and shared financial information with other TDR employees. Yet, Kopylov has refused to permit the Foreign Representative access to the Dropbox account because it purportedly also contains irrelevant personal information. In addition, Mr. Kopylov has denied the liquidator access to TDR's e-mail server for the same reason. He maintains that the company had access to a

---

[3]      See correspondence to M&H from the Contempt Parties' counsel, dated February 12, 2019, attached to the Fatherly Aff. as **Exhibit G**. This position, besides being absurd as "historical financial records" should not first be created now, is plainly untrue, since, the few documents the Contempt Parties did produce included some 2017 bank statements.

server provided by Total Relief Marketing Solutions LLC ("TRMS") (a company under the control of Messrs. Kopylov and Puzaitzer) and that other companies also had access to this server, and so, the access to this server could not be provided to the Foreign Representative on the grounds of confidentiality.  When further requests for access were made it was stated that access could no longer be provided as the service contracts between TDR and the Kopylov-controlled company had been allowed to lapse.  Further, Mr. Kopylov informed the Foreign Representative that the totaldebtrelief.co.uk e-mail address used my Messrs. Kopylov and Puzaitzer were no longer in use as the business was being wound down and  Mr. Kopylov would have to pay for them using his own funds.  However, Mr. Kopylov has continued to use this e-mail address to take part in these very proceedings as recently as March 6; so, he should be able to make all emails on this account available.

5.    After weeks of trying to resolve this matter out of court, the Foreign Representative now seeks the Court's assistance to facilitate his efforts to fulfill his fiduciary duties to TDR's estate and its clients. Without the records sought, the Foreign Representative is unable to efficiently and effectively identify and recover the assets of TDR's estate by reference to the records of TDR and to establish the clients and creditors entitled to distribution of such assets in the UK Proceeding. The Contempt Parties' continued evasion of this Court's order is at great expense to TDR's estate and its clients whose precarious financial state has only been exacerbated by the very company they paid for relief from their financial strain.

6.    Accordingly, the Foreign Representative seeks entry of an order (i) holding the Contempt Parties in civil contempt for their failure to obey the Turnover Order and produce relevant financial records for TDR, and (ii) assessing joint and several fines against the Contempt Parties

and/or ordering the United States Marshal to take Messrs. Kopylov and Puzaitzer into custody until such records are turned over to the Foreign Representative.[4]

### Relevant Factual Background

7.      TDR was a UK-based debt management services company regulated by the Financial Conduct Authority ("FCA"), the UK regulatory agency that governs the consumer credit industry. In August of 2018, the FCA learned that nearly all TDR's client funds held in segregated trust accounts had been transferred to two accounts at TD Bank in the name of TRMS and KLM Management Corp. ("KLM"), two entities controlled by Kopylov and Puzaitzer, both residents of Brooklyn, New York. Decl. of Andrew Fatherly in Support of Foreign Representative's Motion for Turnover of Assets Held by Royal Marketing Research LLC filed on March 8, 2019 [Docket No. 29] ("First Fatherly Decl."), ¶ 3.   Considering the apparent misappropriation of client funds to entities controlled by the same individuals in control of TDR, the FCA filed a winding-up petition requesting compulsory liquidation of TDR and appointment of the Foreign Representative as provisional liquidator on September 11, 2018. *Id.* As of September 12, 2018, the Foreign Representative has been in control of TDR's affairs and Messrs. Kopylov and Puzaitzer no longer exercise control over TDR but have statutory duties to assist and co-operate with the Foreign Representative. On October 31, 2018, the UK Court entered an order for the compulsory winding-up of TDR. *Id.* at ¶ 2. On November 7, 2018, the Foreign Representative was appointed as the liquidator of TDR's estate. *Id.*

8.      Given the allegations of misappropriation of client funds by TDR's principals, it is vital that the Foreign Representative have access to TDR's servers, debt management software and

---

[4]      As it was the Contempt Parties' choice to commingle personal information with TDR's information, the Foreign Representative should not be denied access to the account as a result of this self-serving choice. The Foreign Representative seeks access to all Dropbox accounts as well as the computer hard drives they are stored on.

books and records to not only identify and recover TDR's assets, but by reference to those records to also establish to whom the funds belong, and reconcile the amounts owed and identities of TDR's clients and creditors that are entitled to distributions in the UK Proceeding. Yet, despite several months of good faith efforts by the Foreign Represenative to obtain such information, the Contempt Parties have not provided any financial information for 2017 and 2018. Mr. Puzaitzer, the sole director of TDR, has and continues to maintain not only that he does not have any financial information concerning TDR, but that he has never seen TDR's books and records and that they are under the exclusive control of Mr. Kopylov, who previously admitted to having control over the records but, as stated above, asserted that he could not obtain access to the electronic server on which the records were stored.

9.      On January 18, 2019, counsel to the Foreign Representative filed the Turnover Motion, requesting this Court's assistance in obtaining TDR's books and records (including access to its servers and debt management software) believed to be within the control and/or possession of the Contempt Parties, particularly Mr. Kopylov. After notice and a hearing, this Court entered the Turnover Order, which clearly provided that:

> the Enjoined Parties and any other entity under the control of the Enjoined Parties shall turn over or provide copies of any recorded information, including, without limitation, books, documents, records, accounting records, financial statements, Dropbox accounts, and papers, relating to TDR's assets, affairs, rights, obligations or liabilities, including any electronic data or records maintained on physical or virtual servers of third parties to which the Enjoined Parties have or may obtain access ("TDR's Books and Records"), to the Foreign Representative within ten (10) business days of entry of this Order.

10.     Despite the Turnover Order's clear, unambiguous direction, the Contempt Parties turned over only five documents by the February 8, 2019, deadline: (i) an Excel spreadsheet containing what appears to be sales outreach information; (ii) an Excel file listing the contact dates,

amount of debt, and number of creditors of clients as of an earlier date; (iii) an Excel file listing client balances as of an earlier date; and (iv) two invoices of Barclays Bank PLC, at which TDR held accounts. Despite knowledge that certain of TDR's financial records were saved to a personal Dropbox account of Mr. Kopylov, access to the account was not provided. It was not until February 22, 2018, after much negotiation between M&H and the Contempt Parties' solicitor, that Mr. Kopylov provided copies of certain documents maintained in the Dropbox account to the Foreign Representative. Still, none of the documents provided contain the financial records of TDR that would allow the Foreign Representative to reconcile funds received and transferred by TDR with the amounts owed to TDR's clients and creditors. There is no financial information for 2017 and 2018 whatsoever except for a handful of bank statements from Barclay's Bank.

11.    The Contempt Parties have made the incredible claim that such financial records were not maintained by the company in the ordinary course, but instead would have been created once annually in anticipation for preparing TDR's publicly-filed annual statutory accounts, which was due on September 30, 2018. This utterly incredible assertion is contradicted by the statements of Ms. Tabor-Thickett, who indicated that she regularly provided financial information to Mr. Kopylov's Dropbox account.  Ms. Tabor-Thicket also informed the Foreign Representative that Mr. Kopylov operated the company's Debt Manager software from New York, which software was used to regularly reconcile TDR's financial position as against the bank statements and another report produced by a separate system called DebtSolv.  It would be incomprehensible if Mr. Kopylov had not retained a record and evidence of the successful reconciliations, particularly where monies were held in trust.

12.    To be clear, the Foreign Representative has made clear to the Contempt Parties that he does not require audited financial statements or even formal financial statements, but rather

simply seeks records evidencing the flow of funds in and out of TDR, including funds received from its clients that were required to be held in trust for their benefit by TDR. It is inconceivable that any business would operate without maintaining some rudimentary financial accounting, let alone a publicly-regulated company purporting to offer debt management services to hundreds of clients whose funds TDR was legally required to hold in trust for eventual payment of their debts. There is simply no way that TDR could effectively manage the financial affairs of its clients, let alone its own operations, without maintaining financial records in the ordinary course. Moreover, Mr. Kopylov was in control of TDR and its books and records through September 12, 2018, just eighteen days before TDR's annual statutory accounts was due. He thus cannot credibly claim that as of September 12, 2018, no financial information had been input into QuickBooks or otherwise prepared in connection with submission of the company's annual statutory accounts. Mr. Kopylov was aware of the FCA investigation and pending compulsory liquidation of TDR for over a month while in control of the books and records. He made no representations regarding the compulsory winding-up of TDR. The Foreign Representative accordingly believes that the records have been deliberately concealed and/or potentially destroyed by Kopylov.

13. In short, the Contempt Parties have blatantly ignored the Court's Turnover Order and their failure to turn over basic financial records has caused substantial delay in the Foreign Representative's ability to administer TDR's estate and has wasted time and considerable resources, requiring the Foreign Representative to bring this Motion at the further expense of the estate.

## Relief Requested

14. By this Motion, the Foreign Representative respectfully requests entry of the Contempt Order, substantially in the form attached hereto as **Exhibit A**, (i) holding the Contempt Parties in civil contempt for their failure to obey the Turnover Order and produce relevant financial

records for TDR, as well as access to its relevant server, dropbox accounts, and debt management

software, and (ii) assessing joint and several fines against the Contempt Parties, including the cost

of bringing this Motion, and/or ordering the United States Marshal to take Messrs. Kopylov and

Puzaitzer into custody until such records are turned over to the Foreign Representative.

### Basis for Relief

**I.     The Contempt Parties Should Be Held in Contempt For Violating the Turnover Order**

15.     Pursuant to Bankruptcy Code section 105(a), bankruptcy courts possess the inherent

power to hold parties in civil contempt for violating bankruptcy court orders. *See, e.g., BNY Fin.*

*Corp. v. Masterwear Corp. (In re Masterwear Corp.)*, 229 B.R. 301, 310 (Bankr. S.D.N.Y. 1999)

("A bankruptcy court has the inherent power, under 11 U.S.C. § 105, to hold parties in civil

contempt for violation of its own orders."); *In re Count Liberty, LLC*, 370 B.R. 259, 272 (Bankr.

C.D. Cal. 2007) (noting that bankruptcy courts derive their civil contempt authority from

Bankruptcy Code section 105(a)). The issuance of civil contempt orders typically serves one or

both of two goals: (i) to compel or coerce obedience of a court order; and/or (ii) to compensate

parties for losses resulting from the contemnor's noncompliance with an order of the court. *See In*

*re Ionosphere Clubs, Inc.*, 171 B.R. 18, 21 (S.D.N.Y. 1994) (discussing the purpose of civil

contempt rulings); *Stockschaleder v. Kittay (In re Stockbridge Funding Corp.)*, 145 B.R. 797, 804

(Bankr. S.D.N.Y. 1993), *aff'd in relevant part* 158 B.R. 914 (S.D.N.Y. 1994) (same).

16.     To be held in civil contempt for violating an order of the bankruptcy court, the

following three requirements must be met: (a) the order the party failed to comply with is clear and

unambiguous; (b) the proof of noncompliance is clear and convincing; and (c) the party has not

diligently attempted to comply in a reasonable manner. *See King v. Allied Vision, Ltd.*, 65 F.3d

1051, 1058 (2d Cir. 1995) (discussing standard for obtaining contempt order); *Balaber-Strauss v.*

*Markowitz (In re Frankel)*, 192 B.R. 623, 627-28 (Bankr. S.D.N.Y. 1996) (same); *In re Masterwear Corp.*, 229 B.R. at 310 (same).

17.    As discussed herein, each of the requirements for holding the Contempt Parties in contempt of the Turnover Order is satisfied. First, the requirements of the Turnover Order are clear and unambiguous. The Contempt Parties were required to turnover any and all records of TDR within their possession and/or control by February 8, 2019. Thus, the first requirement for holding the Contempt Parties in civil contempt for violating the Turnover Order is satisfied.

18.    Second, the evidence that the Contempt Parties have violated the Turnover Order is clear and convincing. The Contempt Parties have admitted that they have failed to turn over financial records within the scope of the Turnover Order to the Foreign Representative. Their hollow excuse is that they not only do not have possession or control of these records, but that such financial records do not exist. This claim should be dismissed outright. First, as noted in the Fatherly Aff., The testimony of Ms. Tabor-Thickett disproves this. In addition, common sense dictates some financial records must exist, yet nothing concerning 2017 and 2018 has been turned over to the Foreign Representative or located within TDR's books and records to which the Foreign Representative has access. At a minimum, the Foreign Representative should be given full access to the Dropbox accounts maintained by Mr. Kopylov and the hard drive of Kopylov's personal computer, which are believed to contain TDR's financial records, including the Debt Manager and Debt Solv software.

19.    Third, the Contempt Parties have not diligently attempted to comply with the Turnover Order in a reasonable manner. Since his appointment, the Foreign Representative, acting as a trustee of TDR's UK liquidation, has repeatedly requested the turnover of TDR's books, documents, records, electronic records, and paper relating to the property of TDR's estate to no

avail. Despite already being obligated to turn over such records under UK law, the Foreign Representative was forced to request an order from this Court directing the turnover of any records held in the United States by the Contempt Parties. Despite the entry of the Turnover Order on January 25, 2019, the Contempt Parties have still failed to turn over the requested financial records. After the Contempt Parties' first minimal production, their solicitor represented -- in writing -- to M & H that there were no further records. After being challenged by M & H as to specific records, they produced quite a bit more, demonstrating their duplicity. And while their solicitor has represented in writing that the Contempt Parties cannot produce emails because their license with TRMS (a wholly controlled affiliate which is also a party to the Turnover Order) for the server has lapsed, Mr. Kopylov responded to the Turnover Motion on the self-same email that is supposedly on that server. This is hardly a diligent attempt at compliance.

20.     Without these books and records, the Foreign Representative will be unable to properly identify and evaluate transfers of TDR's assets and recover any assets that may have been misappropriated to entities or individuals in the United States, nor identify to whom TDR owes money and which funds are the property of TDR clients. If the Contempt Parties are not forced to immediately comply with the Turnover Order, there is significant risk that TDR's books and records could be lost or destroyed to the detriment of TDR's clients and creditors.

## II.    The Court Should Enforce the Turnover Order With Sanctions

21.     Courts have recognized that sanctions for civil contempt should serve to either compensate a party for damages resulting from the contempt or to coerce compliance with the orders of the Court. *See In re Frankel*, 192 B.R. at 631 ("Sanctions for civil contempt serve the objectives of compensating a party for damages resulting from the contempt and coercing compliance with

orders of the Court."); *In re Count Liberty, LLC*, 370 B.R. at 274 ("Punishment for civil contempt must be either coercive or compensatory.").

22.    Here, the Foreign Representative believes that the appropriate sanction for the Contempt Parties' conduct is to compel the Contempt Parties to comply with the terms of the Turnover Order by awarding sanctions, including, without limitation, assessment of daily fines against the Contempt Parties and/or ordering the United States Marshal to take Messrs. Kopylov and Puzaitzer into custody for detainment until they comply with the Turnover Order by producing TDR's financial records. *See generally In re Williams*, 213 B.R. 189 (Bankr. M.D. Ga. 1997) (after giving the debtor a period of time to comply with its order, imposed a daily fine each day the debtor was late in compliance); *In re Flack*, 513 B.R. 617 (Bankr. S.D. Fla. 2014) (ordering incarceration of debtor to "coerce him" to comply with the court's order and discussing authority of bankruptcy courts to order such relief).

23.    The Foreign Representative also believes compensatory damages are appropriate, including the payment of the fees and costs incurred by the Foreign Representative in bringing this Motion. *Continental Ins. Co. v. Atlantic Cas. Ins. Co.,* Civ. No. 07-3635 (DC), 2008 WL 3852046, *2 (S.D.N.Y. Aug. 13, 2008) (awarding sanctions when non-party failed to obey subpoena and did not make a motion to quash or modify the subpoena).

<u>**No Prior Requests for Contempt**</u>

24.    The original motion for turnover of the books and records which are the subject of this Contempt Motion was brought on January 18, 2019 [Docket No. 19], and the original Turnover Order was entered on January 25, 2019 [Docket No. 22]. No prior motion for the contempt relief requested herein has been made to this or any other court.

<u>**Satisfaction of Local Rule 9013-1(a)**</u>

25.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to the Motion. Accordingly, this Motion satisfies Rule 9013-1(a) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of New York.

## **Notice**

26.     Notice of this Motion shall be provided to the parties identified in **Exhibit B** hereto. The Foreign Representative submits that no other or further notice need be provided.

## **Conclusion**

27.     In conclusion, the Foreign Representative respectfully requests that this Court grant the relief requested herein and entry the Contempt Order in the form attached hereto as **Exhibit A**.

Dated: March 21, 2019
New York, New York

MAYERSON & HARTHEIMER, PLLC,

*/s/ Sandra E. Mayerson*
Sandra E. Mayerson, Esq.
David H Hartheimer, Esq.
845 Third Avenue, 11th Floor
New York, NY 10022
Tel: (646) 778-4381
Fax: (646) 778-4384
sandy@mhlaw-ny.com
david@mhlaw-ny.com

*Counsel for the Foreign
Representative*

14

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 |
| Total Debt Relief Ltd., | |
| Debtor in a Foreign Proceeding. | Case No. 18- 46013 (CEC) |

## ORDER HOLDING THE CONTEMPT PARTIES IN CIVIL CONTEMPT

Upon the *Foreign Representative's Motion for an Order of Civil Contempt* (the "Contempt

Motion")[1] and the Fatherly Decl. filed in support thereof, which were filed on behalf of the Foreign

Representative, Stephen John Hunt, in his capacity as the duly appointed foreign representative of

Total Debt Relief Ltd. (the "Debtor" or "TDR") in relation to the liquidation of TDR (the "UK

Proceeding") pursuant to the UK Insolvency Act of 1986 (the "Insolvency Act") currently pending

before the Business and Properties Courts of England and Wales of the High Court of Justice

(London, England) (the "UK Court"); this Court having considered and reviewed the Contempt

Motion and having held a hearing to consider the relief requested therein on April 10, 2019 (the

"Hearing"); and the appearances of all interested parties and all responses or objections to the

Motion (the "Responses"), if any, having been duly noted in the record of the Hearing; and upon

all of the proceedings before the Court; and all Responses having been withdrawn or overruled on

the merits with prejudice; and no good cause existing for denial of the relief sought in the Contempt

Motion; and after due deliberation and sufficient cause appearing therefor;

The following facts and conclusions of law are hereby determined:

---

[1]      Any capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the
Contempt Motion.

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1410(3).

4.      Adequate and appropriate notice of the filing of and hearing on the Contempt Motion and this proposed Order, was given to: (a) Office of the United States Trustee for the Eastern District of New York; (b) the Foreign Representative, on behalf of himself and the Debtor; (c) UK counsel to the Foreign Representative; (d) Total Relief Marketing Solutions LLC ("TRMS"); (e) KLM Management Corp. ("KLM"); (f) Eric Puzaitzer; (g) Lawrence Kopylov; (h) UK counsel to Eric Puzaitzer and Lawrence Kopylov (together, the "Contempt Parties"); and (i) all parties requesting notice in this proceeding, each at their last known email or street address. Such notice is deemed adequate for all purposes, and no other or further notice need be given.

5.      The relief granted herein is necessary and appropriate, in the interests of the public and of international comity, not inconsistent with the public policy of the United States, and warranted pursuant to sections 105(a) and 1507 of the Bankruptcy Code, and will not cause hardship to creditors of TDR or to any other parties in interest, in each case that is not outweighed by the benefits of granting such relief.

6.      The relief granted herein is necessary to effectuate the purposes and objectives of chapter 15 and is in the best interest of TDR, its creditors, and all other parties in interest.

7.      For all the foregoing reasons, it is hereby **ORDERED, ADJUDGED AND DECREED**, that:

   A.      All objections to the relief granted herein are hereby overruled.

2

B.    The Contempt Parties are in civil contempt of the Turnover Order.

C.    The Contempt Parties are hereby ordered to immediately turn over or provide copies to the Foreign Representative of any recorded information, including books, documents, records, papers, and electronic data or records maintained on physical or virtual servers of third parties to which the Contempt Parties have access, relating to TDR's assets, affairs, rights, obligations or liabilities, including any profit and loss statement, receipts, receivables, invoices, transfers and payments, ledgers concerning client funds held in trust, and any other general business ledger ("TDR's Books and Records"). For the avoidance of doubt, turnover of TDR's Books and Records shall include providing the Foreign Representative access to: (i) all Dropbox accounts having any information concerning TDR, as well as the hard-drive of any computers or other electronic devices on which such Dropbox accounts are stored; (ii) all debt management software accounts having information concerning TDR, as well as the hard-drive of any computers or other electronic devices on which such software is installed; and (iii) the e-mail account of totaldebtrelief.co.uk.

D.    For the avoidance of doubt and to the extent not already ordered under the Turnover Order, the Contempt Parties are hereby prohibited from transferring, encumbering, or otherwise disposing of TDR's Books and Records, which prohibition shall include any action to cause TDR's Books and Records to become unavailable to the Contempt Parties, such as termination or suspension of any agreement with any third party which maintains TDR's Books and Records on a physical or virtual server.

E.    Counsel to the Foreign Representative shall report to this Court through a filing on the Court's ECF system whether and to what extent the Contempt Parties have satisfied this Order as soon as possible after compliance, or one week from entry of this Order (the "Compliance Deadline").

3

F.     The Contempt Parties are hereby assessed jointly and severally all of the fees and expenses of the Foreign Representative in bringing this Contempt motion, including, without limitation, fees and expenses of M&H in connection with this matter, fees and expenses of the Foreign Representative's British solicitors in connection with this matter, and fees and expenses of any witness in connection with this matter. M & H shall file an expense statement on the Court's ECF system within 10 business days of today's date and serve a copy on the Contempt Parties, their solicitor, and the Office of the US Trustee by email, with a courtesy copy delivered to the chambers of the Hon. Carla E. Craig. Such parties shall have five business days to object to the expense statement (the "Objection Deadline") which objection must be filed with the Court on its ECF system and served by email upon (i)the Office of the US Trustee at Nazar.Khodorovsky@usdoj.gov, (ii) M&H at sandy@mhlaw-ny.com, with a copy to david@mhlaw-ny.com, (iii) the British solicitors for the Foreign Representative at fcoulson@moonbeever.com, with a copy to irees@moonbeever.com, and (iv) the Foreign Representative at stephen.hunt@griffins.net, with a courtesy copy delivered to the chambers of the Hon. Carla E. Craig.  If no objection is filed by the Objection Deadline, the amount of the expense statement must be paid by the contempt parties within 10 days of the filing of the expense statement. If a timely objection is filed, the Court will hold a hearing to determine the amount assessed against the Contempt Parties.

G.     The Contempt Parties are hereby assessed a daily fine of $_____, on a joint and several basis, for each day they are late in compliance with the Turnover Order and this Order after the Compliance Deadline.

H.     After passage of the Compliance Deadline, if this Order and the Turnover Order have not been fully complied with, this Court will instruct the United States Marshal to take custody

of Messrs. Kopylov and Puzaitzer for detainment until they comply with the Turnover Order and this Order.

I.      This Order is without prejudice to the right of the Foreign Representative to seek additional relief under applicable provisions of the Bankruptcy Code or any remedy or further relief.

J.      This Order shall be effective and enforceable immediately upon entry and shall constitute a final order within the meaning of 28 U.S.C. § 158(a).

K.      This Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order, any requests for additional relief or any request by an entity for relief from the provisions of this Order.


Dated: _____, 2019


                                        _____
                                        The Hon. Carla E. Craig
                                        United States Bankruptcy Judge

# **Exhibit  B**

**Service By US Mail**

1. Office of the United States Trustee for the Eastern District of New York, Brooklyn
   Division
   U.S. Federal Office Building
   201 Varick Street, Suite 1006
   New York, New York
   Attn: Nazar Khodorovsky

2. Total Relief Marketing Solutions LLC
   2566 East 17th Street
   Brooklyn, New York 11235

3. KLM Management Corp.
   55 Oceana Drive, East
   Suite 3D
   Brooklyn, NY 11235

4. Eric Puzaitzer
   7270 Royce Place
   Brooklyn, NY 11234

5. Lawrence Kopylov
   55 Oceana Drive, East
    Suite 3D
   Brooklyn, New York 11235

6. Barry Glickman, Esq.
   Zeichner Elliman & Krause
   1211 Avenue of the Americas, 40th Floor
   New York, New York 10036

**Service by Electronic Mail**

1. Stephen John Hunt
   c/o Griffins
   Tavistock House South
   Tavistock Square
   London, WC1H 9 LG,
   England
   Stephen.hunt@griffins.net

2.  Andrew Fatherly
    c/o Griffins
    Tavistock House South
    Tavistock Square
    London WC1H 9LG, England
    Andrew.Fatherly@griffins.net

3.  Frances Coulson
    Ian Rees
    Moon Beever Solicitors
    Bedford House
    21a John Street
    London WC1N 2BF, England
    fcoulson@moonbeever.com
    and
    irees@moonbeever.com

4.  Isaac Mirza
    Osborn Knight (Solicitors) Ltd.
    1st floor, No. 1 Spinningfields
    Manchester M3 3JE, England
    Isaac.mirza@osbornknight.co.uk